# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 13-993V
Filed: June 4, 2019

| | | |
|---|---|---|
| * * * * * * * * * * * * * | | |
| JULIE SULIMAN, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Attorneys' Fees and Costs |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | | |

*Jessica Olins, Esq.*, Washington, DC, for Petitioner.
*Lisa Watts, Esq.*, United States Department of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On December 16, 2013, Julie Suliman ("Ms. Suliman or "Petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program.[2] Petitioner alleged that tetanus-diphtheria-acellular pertussis ("Tdap") vaccination that she received on April 1, 2011 caused her to develop polymyalgia rheumatica ("PMR") and/or myositis. Petition, ECF No. 1, at 1-2. An entitlement hearing was held in Washington, DC on January 29-30, 2018, and the undersigned issued her Decision dismissing the petition on November 27, 2018. ECF No. 77. Judgment entered on January 3, 2019.

---

[1] The undersigned intends to post this Ruling on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755.

On February 25, 2019, Petitioner filed an application for attorneys' fees and costs. ECF No. 81 ("Fees App."). Petitioner requests total attorneys' fees and costs in the amount of $186,132.26 (representing $164,365.60 in attorneys' fees and $21,766.66 in costs). Fees App at 1. Pursuant to General Order No. 9, Petitioner asserts that she has not personally incurred any costs in pursuit of this litigation *Id.* at 2. Respondent responded to the motion on March 4, 2019, stating "Respondent is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case" and requesting that the undersigned "exercise her discretion and determine a reasonable award for attorneys' fees and costs." Resp't's Resp. at 2-3, ECF No. 82. Petitioner filed a reply on March 4, 2019, reiterating her belief that the request for fees and costs was reasonable. Reply at 2-3, ECF No. 83.

This matter is now ripe for consideration.

## I. Legal Framework

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1). Here, although petitioner was not successful in pursuing her claim, the undersigned finds that both elements have been met. First, the undersigned does not doubt that petitioner brought her claim in a good-faith belief that her vaccination played a causal role in her injury. Additionally, the claim possessed sufficient objective support to meet the second half of the reasonable basis test, and Respondent has not challenged the reasonable basis of the claim. Accordingly, a final award of attorneys' fees and costs is proper.

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fees" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id.*

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

## II. Discussion

### a. Reasonable Hourly Rate

2

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioner requests that her attorneys be compensated at the following rates: for Mr. F. John Caldwell, Jr., $300.00 per hour for work performed from 2013-2015, $356.00 per hour for work performed in 2016, $367.00 per hour for work performed in 2017, $385.00 per hour for work performed in 2018, and $404.00 per hour for work performed in 2019; for Ms. Jessica Olins, $184.00 per hour for work performed in 2018; for Ms. Anne Toale, $300.00 per hour for work performed in 2013, and for Ms. Ann Golski, $360.00 per hour for work performed in 2017 and $371.00 per hour for work performed in 2018. Fees App. Ex. 1 at 26-27. Petitioner also requests compensation for paralegals at rates ranging from $95.00 - $154.00 per hour based on the paralegal and the year the work was performed. *Id.*

The requested rates are all reasonable and consistent with what Maglio Christopher and Toale attorneys and staff have been previously been awarded, with the exception of Mr. Caldwell's requested 2019 rate. Previously, Mr. Caldwell has been awarded $400.00 per hour for his work in 2019. *See Liu v. Sec'y of Health & Human Servs.*, No. 10-55V, 2019 WL 2098165, at *16 (Fed.

---

[3] The 2015-2016 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf. The 2017 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Cl. Spec. Mstr. Apr. 19, 2019); *Kahn v. Sec'y of Health & Human Servs.*, No. 17-789V, 2019 WL 1805997, at *2 (Fed. Cl. Spec. Mstr. Mar. 4, 2019). Because Mr. Caldwell performed 2.6 hours of work in 2019, this results in a reduction of **$10.40**.

      **b. Hours Reasonably Expended**

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08–756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14–1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728–29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

The undersigned has reviewed the billing entries and finds that an overall reduction of hours is necessary for several reasons. First, the undersigned finds that the hours billed by Ms. Olins in this case are excessive and unnecessary. Ms. Olins billed a total of 17.7 hours in 2018 to prepare and review hearing material and attend the entitlement hearing in Washington, DC. However, the undersigned notes that Ms. Olins played no role in the hearing, as Petitioner was represented by Mr. Caldwell and Ms. Golski. In evaluating whether an expense is reasonable, the Federal Circuit has endorsed a special master's evaluation of whether a hypothetical client would pay for the expenses being submitted for compensation to the Vaccine Program. *See Riggins v. Sec'y of Health & Human Servs.*, 406 F. App'x 479, 484 (Fed. Cir. 2011). *See also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citing *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis in the original" ("In the private sector, billing judgment is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority")). In the undersigned's experience, it would not be reasonable to bill Petitioner for the time of a third attorney to prepare for and travel to a case she was not participating in, especially when Petitioner

was already represented at hearing by two other attorneys. This supports an overall reduction of fees.

Next, the undersigned notes that Mr. Caldwell has consistently block-billed many large entries. Block billing, or billing large amounts of time without sufficient detail as to what tasks were performed, is clearly disfavored. *Broekelschen*, 102 Fed. Cl. At 729. Examples of block billing by Mr. Caldwell include 7.6 hours for "Trial preparation" on 1/10/18, 5.9 hours for "Pre-trial preparations" on 1/12/18, 7.9 hours for "Trial preparation" on 1/16/18, 6.8 hours for "Trial preparation" on 1/18/18, and 6.9 hours for "Trial preparation" on 1/24/19 among others. Fees App. ex. 1 at 21. Additionally, Mr. Caldwell frequently combined several related activities into one single billing entry without further apportioning the time. For example, one representative entry on 12/16/16 for 3.9 hours reads "Review file and medical records in depth in anticipation of telephone conference with expert; review relevant order and expert reporting to date for same; attend telephone conference with expert." *Id.* at 16. Entries such as these do not allow the undersigned to assess the reasonableness of the time expended. For example, it would likely be reasonable for Mr. Caldwell to expend 2 hours preparing for a conference which lasted 1.9 hours, but it would likely not be reasonable for Mr. Caldwell to expend 3.5 hours preparing for a conference which only lasted 0.4 hours. Given the information provided however, the undersigned cannot make that distinction.

Finally, also warranting reduction is time billed for administrative/clerical tasks and some minor overbilling. Most notably is that Mr. Caldwell and paralegals billed time making travel arrangements (entries on 6/1/14, 6/3/14, 7/6/17) and paralegals overbilled for filing documents and reviewing routine orders, some of which had already been reviewed and billed for by attorneys (e.g., entries on 12/17/13, 1/6/14, 8/14/14, 2/23/15, 2/5/16, 4/30/18).

Accordingly, the undersigned will reduce the amount of attorneys' fees by 5%. This results in a reduction of **$8,217.76**.[4] Petitioner is therefore awarded final attorneys' fees of **$156,137.44**.

### c. Reasonable Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $21,766.66 in costs. Fees App. at 1. This amount is comprised of obtaining medical records and medical literature, travel expenses for counsel visiting Petitioner, travel expenses for counsel and for Petitioner's expert Dr. Raji Grewal for the entitlement hearing, Dr. Grewal's work in preparing two expert reports, postage, and the Court's filing fee. *See generally* Fees App. Ex. 2.

The undersigned finds that the amount billed by Dr. Grewal requires some reduction. Between 2015-2016, Dr. Grewal billed 13 hours to review medical records and prepare two expert reports at a rate of $400.00 per hour. The undersigned finds the overall amount billed as a result of this work to be reasonable. However, for his time preparing for and testifying at the entitlement hearing in 2018, Dr. Grewal increased his rate to $500.00 per hour while billing a total of 15 hours. Fees App. Ex. 2 at 85. Given the quality of his testimony at trial, the undersigned finds that such an increase is not warranted.

---

[4] ($164,365.60 - $10.40 rate reduction) * 0.05 = $8,217.76.

Special Master's have previously reduced an expert's hourly rate when the quality of their work product is sub-standard. *Schoeberlin v. Sec'y of Health & Human Servs.*, No. 14-697V, 2018 WL 3991219, at *3-4 (Fed. Cl. Spec. Mstr. Jun. 22, 2018); *Sabella*, 86 Fe. Cl. At 206 (indicating that a special master may consider the quality of an expert's work). As noted in the Decision dismissing the petition, Dr. Grewal's testimony was deficient in several areas – he was unable to articulate what ASIA or "ASIA-like" theory was, he could not explain how any of the antigens in the Tdap vaccine could trigger the development of PMR or myositis, and ultimately conceded that there was no scientific basis to support a connection between the Tdap vaccine and PMR or myositis. *Suliman v. Sec'y of Health & Human Servs.*, No. 13-993V, 2018 WL 6803697, at *26 (Fed. Cl. Spec. Mstr. Nov. 27, 2018). Ultimately, the undersigned concluded that "Dr. Grewal's conclusory statements do not constitute a 'sound and reliable' theory for how Tdap vaccine could cause PMR or myositis" and that "despite his reliance on ASIA theory, he appeared to have only passing familiarity with it, as evidenced by his inability to articulate the theory" nor did he provide any other plausible theory. *Id.* at 28. In sum, Dr. Grewal's testimony did nothing to assist Petitioner's claim.

For these reasons, the undersigned will compensate Dr. Grewal for his time in 2018 at $400.00 per hour, consistent with what his prior work was compensated at. This results in a reduction of **$1,500.00**.[5] Additionally, Dr. Grewal billed his full rate for time spent traveling to and from the hearing. The Vaccine Program has consistently compensated attorneys, medical experts, and other professionals at one-half of their standard billing rate for travel time absent proof that the individual performed case-related work while traveling. *Bogdan v. Sec'y of health & Human Servs.*, No. 16-1681V, 2019 WL 1528297, at *8 (Fed. Cl. Spec. Mstr. Mar. 13, 2019); *Arevalo v. Sec'y of Health & Human Servs.*, No. 15-406V, 2018 WL 6822350, at *3 (Fed. Cl. Spec. Mstr. Nov. 30, 2018); *A.P. v. Sec'y of Health & Human Servs.*, No. 14-894V, 2018 WL 3991358, at *3 (Fed. Cl. Spec. Mstr. Jul. 17, 2018). Because the billing statement submitted by Dr. Grewal does not indicate that he worked while traveling, the undersigned shall reduce the amount billed for travel by one-half, resulting in a reduction of **$1,200.00**.[6]

Concerning the remaining costs, Petitioner has provided adequate documentation supporting them, and all appear reasonable in the undersigned's experience. Petitioner is therefore awarded final costs in the amount of **$19,066.66**.

### III. Conclusion

In accordance with the foregoing, Petitioner's motion for attorneys' fees and costs is **GRANTED**. I find that Petitioner is entitled to a reimbursement of attorneys' fees and costs as follows:

1) **A lump sum in the amount of $175,240.10, representing reimbursement for Petitioner's attorneys' fees and costs, in the form of a check payable to Petitioner and Ms. Jessica Olins, Esq.**

---

[5] ($500.00 per hour - $400.00 per hour) * 15 = $1,500.00

[6] (6.0 hours of travel *$400.00 per hour) = $2,400.00. $2,400.00 / 2 = $1,200.00.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court shall enter judgment in accordance herewith.[7]

**IT IS SO ORDERED.**

s/Mindy Michaels Roth
Mindy Michaels Roth
Special Master

---

[7] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).